UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ADRIAN S. HOLMES,

    Petitioner,

v.                                       3:01-cv-453
                                        3:98-cr-006

UNITED STATES OF AMERICA,

    Respondent.

**MEMORANDUM OPINION**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

I.     Standard of Review

This court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete

<pre>Case 3:01-cv-00453   Document 12   Filed 07/08/05   Page 1 of 11   PageID #: 41</pre>

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

If it plainly appears from the face of the motion, the annexed exhibits and the prior proceedings in the case that the petitioner is not entitled to relief in this court, the action should be summarily dismissed; an evidentiary hearing is not required. Rule 4 of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS; *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986); *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

II.     Factual Background

Petitioner was convicted by a jury of possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to concurrent terms of imprisonment of 180 months and 120 months, respectively. Petitioner's convictions were upheld on direct appeal. *United States v. Holmes*, No. 99-5189, 2000 WL 1033046 (6th Cir. July 19, 2000) (unpublished decision), *cert. denied*, 531 U.S. 1202 (2001).

The Sixth Circuit summarized the evidence against petitioner as follows:

> On January 13, 1998, Knoxville Police Department Officers Lawrence Lipscomb and Bruce Conkey observed Holmes driving in a high crime area of Knoxville, Tennessee. Officer Conkey knew Holmes from prior contacts and

had reason to believe that Holmes was driving without a valid driver's license. During a stop that ensued, Officer Lipscomb saw Jarvis Bonner, a passenger in the car with Holmes, place a baggy containing crack cocaine on the rear floorboard. Holmes and Bonner were thereafter placed in separate police cars, where each was advised of his *Miranda* rights. Upon questioning, Bonner said that the cocaine in the baggy belonged to Holmes. Holmes, on the other hand, disclaimed both knowledge and ownership of the cocaine. He explained that the vehicle he was driving belonged to his girlfriend, Shonta Wilson. Both men were transported to the Knoxville Police Department where *Miranda* warnings were again read to them. Each signed a waiver of his *Miranda* rights.

During subsequent questioning, Holmes at some point said: "I think I might need my lawyer." Officer Lipscomb immediately stopped all questioning of Holmes. When Holmes later tried to initiate a conversation with Officer Lipscomb, Officer Lipscomb explained that he could not talk with Holmes because Holmes had invoked his right to counsel. Holmes persisted, however, telling Officer Lipscomb that he wanted to make a statement without his lawyer being present. Holmes proceeded to say that the cocaine was his and that he wanted to cooperate if Officer Lipscomb would assist in getting the car returned to Wilson. Upon further questioning, Holmes acknowledged that he had been in the drug business since 1994; he identified many of his crack cocaine suppliers; and he agreed to a search of the residence that he shared with Wilson. Holmes later bonded out on state drug charges.

On January 21, 1998, a federal grand jury returned an indictment charging Holmes with possession of a controlled substance with the intent to distribute. On January 26, 1998, armed with an arrest warrant, officers went to Wilson's residence where they received Wilson's consent to search. Holmes was found hiding under a bed; a loaded .30-caliber M-1 carbine rifle was found in a hall closet. Wilson explained that Holmes told her that the rifle was to be used to kill Jarvis Bonner. Wilson also consented to a search of her car, where the officers found some of Holmes's clothes, including a shirt with a pocket containing a set of Tanita electronic scales.

After Holmes was arrested on January 26, 1998, a superseding indictment was returned, charging Holmes not only with possessing a controlled substance with intent to distribute but also with being a felon in possession of a firearm.

*Id.*, slip op. at 1-3, 2000 WL 1033046 **1.

In support of his § 2255 motion, petitioner alleges four instances of ineffective assistance of counsel. He also alleges he should not have received an enhancement for obstruction of justice, that his firearm conviction is void, and that his sentence on the firearm charge is illegal and excessive.

III. Discussion

*A. Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an

4

attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Petitioner first claims his trial attorney and appellate attorney should have challenged the sufficiency of the evidence to sustain a conviction for possession with intent to distribute crack cocaine. According to petitioner, only 6.5 grams of crack was discovered during the traffic stop and there was no evidence introduced at trial that petitioner, a well-known crack user, had any intention to distribute the crack in his possession.

As the Sixth Circuit noted, however, during questioning by Officer Lipscomb at the Knoxville Police Department, "Holmes acknowledged that he had been in the drug business since 1994; he identified many of his crack cocaine suppliers; and he agreed to a search of the residence that he shared with Wilson." *United States v. Holmes*, slip op. at 2, 2000 WL 1033046 **1. The trial testimony of Officers Conkey and Lipscomb set forth in detail the extent of petitioner's admitted drug dealing. [Criminal Action No. 3:98-cr-06, Court File No. 93, Transcript of Proceedings, pp. 123-129, 211-215, respectively].

Based upon this testimony, any motion for acquittal or appeal based upon simple possession of drugs would have been frivolous. The failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel. *United*

5

*States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990). Likewise, an attorney is not required to raise meritless issues on appeal. *Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993).

Petitioner's attorney did object to the government's use of a peremptory strike to exclude the only African-American from the jury, but the court denied the *Batson* challenge and the Sixth Circuit affirmed. Petitioner claims, however, that his attorney should have objected to the overall composition of the jury panel and should have made sure that members of petitioner's race were called for jury duty.

Pursuant to the Sixth Amendment, a criminal defendant is entitled to a jury venire, from which the petit jury is drawn, that represents a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). However, there is no requirement that the jury panel must accurately reflect the proportionate strength of every identifiable group:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Id*. at 538.

The Equal Protection Clause of the Fourteenth Amendment also prohibits discrimination in jury selection. *Castaneda v. Partida*, 430 U.S. 482 (1977).

> [I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed

resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. This method of proof, sometimes called the 'rule of exclusion,' has been held to be available as a method of proving discrimination in jury selection against a delineated class. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

*Id*. at 494-95 (citations omitted).

Petitioner makes the broad statement that his jury panel was white. He has failed to put forth any facts which would establish that the jury venire, from which his petit jury was chosen, did not represent a fair cross section of the community nor has he shown that the jury selection procedure excluded distinctive groups or was not racially neutral. The Jury Plan for the Eastern District of Tennessee, which was in place at the time the venire was selected for petitioner's trial, prohibited discrimination in the jury selection process and established race-neutral procedures for the selection of jurors. Accordingly, there was no basis upon which petitioner's attorney could have objected to the composition of the jury panel and his failure to do so did not constitute ineffective assistance of counsel.

Petitioner alleges his attorney failed to object at sentencing to the erroneous addition of two criminal history points for minor misdemeanor offenses; he also claims his attorney should have objected to the obstruction of justice enhancement and relies on *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000). The two convictions to which petitioner refers, shoplifting and unlawful possession of a weapon, were properly counted as misdemeanor convictions pursuant to U.S.S.G. §§ 4A1.1(c) & 4A1.2, and thus it would have been futile for petitioner's attorney to have objected to the criminal history points. As the court has noted in subsection B., hereinafter, of this opinion, *Apprendi* does not afford petitioner relief and thus his attorney did not render ineffective assistance of counsel in that regard.

Petitioner alleges his attorney should have filed a motion to suppress the evidence obtained as a result of the traffic stop, based upon the argument that it was a pretextual stop. Whether the traffic stop was on a pretext, however, is immaterial. "[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle." *United States v. Hill*, 195 F.3d 258, 265 (6th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 812-813 (1996)); *see also United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.).

As the Sixth Circuit noted, the record indicated that the arresting officer "knew Holmes from prior contacts and had reason to believe that Holmes was driving without a valid driver's license." *United States v. Holmes*, slip op. at 1, 2000 WL 1033046 **1. In fact, Officer Conkey testified at the suppression hearing[1] that while he was following

---

[1] Defense counsel moved to suppress petitioner's statement to police.

petitioner, and before the stop, he verified through a records check that petitioner's license was in fact revoked. [Criminal Action No. 3:98-cr-06, Court File No. 30, Transcript of Suppression Hearing, pp. 11-12]. Accordingly, any motion to suppress based upon a pretextual stop would have been frivolous and counsel did not render ineffective assistance by failing to file such a frivolous motion.

Based upon the foregoing, the court finds that petitioner has failed to meet either prong of the *Strickland* test. The objections and motions that petitioner claims counsel should have made would have been frivolous. Defense counsel did not render ineffective assistance of counsel.

### B. Obstruction of Justice

Petitioner was given a two-level enhancement to his base offense level, pursuant to U.S.S.G. §3C1.1, for obstruction of justice. This was based upon his threat to kill the government's witness, and his trial testimony denying the statements he gave to officers. Petitioner claims this enhancement was illegal because it was not submitted to the jury; he relies on the subsequent decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

In *Apprendi*, the U.S. Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Id*. at 490. *Apprendi* was decided after petitioner was sentenced and thus does not afford him relief. *Goode v. United*

9

Case 3:01-cv-00453   Document 12   Filed 07/08/05   Page 9 of 11   PageID #: 49

*States*, 305 F.3d 378, 381 (6th Cir. 2002) ("We conclude that *Apprendi* does not apply retroactively to initial § 2255 motions as it is not a watershed rule of criminal procedure.").

### C. Firearm Conviction and Sentence

Petitioner alleges his conviction for being a felon in possession of a firearm is void because it violates the Tenth Amendment's separation of power between the States and the federal government. According to petitioner, his was a local noneconomic state crime at best and did not constitute a federal crime. Petitioner's argument lacks merit; the Sixth Circuit has held that § 922(g) is constitutional on its face under the Commerce Clause. *See United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997); *States v. Chesney*, 86 F.3d 564 (6th Cir. 1996); *United States v. Turner*, 77 F.3d 887 (6th Cir. 1996).

Petitioner also alleges his sentence for being a felon in possession of a firearm was excessive because it took place after the drug crime and was not related to it. The court determined that, based upon petitioner's extensive criminal history and the facts surrounding his case, a sentence at the upper end of the guidelines range was proper for both convictions. It should be noted that the court, over the government's objection, refused to enhance petitioner's sentence on the drug conviction for possession of a firearm during a drug trafficking offense. [Criminal Action No. 3:98-cr-06, Court File No. 90, Transcript of Sentencing, pp. 7-9]. Petitioner's sentence was not excessive, and he is not entitled to relief on that claim.

IV.     Conclusion

The petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. A certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253.

**AN APPROPRIATE ORDER WILL ENTER.**

                                                   *s/ James H. Jarvis*
                                             UNITED STATES DISTRICT JUDGE